## Morrill *vs.* Otis.

To prove who were the heirs at law of a person deceased, a witness testified that the person died without issue, leaving his brother, his nephew and his niece, his heirs at law—*Held*, that the evidence was incompetent; and that to prove that these individuals were the heirs at law, the relationship of the alleged brother to the deceased must be shown by proof of his descent from the parents of the deceased, and their marriage: and that the relationship of the parents of the alleged nephew and niece to the deceased, must also be shown, and their marriage, and that the alleged heirs were the issue of that marriage.

Parol evidence that a person died intestate as to his wild lands, is not admissible, unless the absence of the will be accounted for; but it should be produced, that the court may determine, from an examination of its language, whether he did die thus intestate.

An alteration of an instrument is something by which its meaning or language is changed, either in a material or an immaterial particular. If what is written upon or erased from the paper containing an instrument, have no tendency to produce this result, nor to mislead any person, it will not be an alteration.

Memoranda upon a plan that certain persons desired to purchase one of the lots, and to whom, and when it was sold, but not varying the courses and distances of the lines of the lots, nor the relative situations of the lots to each other, are not an alteration of the plan.

If such memoranda were made with intent to deceive any person, whether they would render the plan incompetent as evidence, *quære ?*

WRIT OF ENTRY, to recover forty acres of land, situated in Deering, in this county.

The title of the demandant was by a deed from Isaac Smith, and it was agreed that the demandant had all the title that Smith had by virtue of a deed from Hunking Penhallow, and Benjamin Penhallow, to him, dated on the 2d day of July, A. D. 1825. That conveyance purported to be a deed of release and quitclaim from the grantors to Smith, of thirty-nine forty-eighth parts, undivided, of one of the lots into which the right numbered fifteen, belonging to Richard Wibird, one of the Masonian proprietors, in the township of Deering, was divided. The demandant contended that these grantors owned the property described in their deed, by a title derived from Richard Wibird. For the purpose of proving Richard Wibird's title, he offered a copy of the proceedings of the Masonian proprietors, assigning to

Richard Wibird the right numbered fifteen, on the Contoocook river, which was alleged to include the demanded premises. The right was divided into lots, and the demanded premises constituted a part either of lot No. 37 or of lot No. 38. To show the courses and distances of the lines of the lots, the demandant offered an original plan and survey, made by James Betton on the 31st day of March, 1775, purporting to show the division of the right into lots. To the admission of this plan in evidence, the tenant objected, on the ground that it was apparent, on its face, that soon after it was made, and at various times since, down to the present day, it had suffered various mutilations, and had received various additions, and that alterations had been made, which additions, in particular, had a direct bearing on this case, and were made by persons who had the custody of the plan, and whose interests were adverse to those of the tenant. It was admitted that the paper produced was the original plan.

Upon an inspection of the plan, there appeared upon it the following words and figures: Upon that part of it which was intended to represent lot No. 38, were written these words, "Mr. David ―― desires the offer of this lot; sold to Capt. Isaac Smith $\frac{29}{48}$ parts of this lot, by H. Penhallow and D. Penhallow." Upon the part intended to represent lot No. 37, were the following words: "Mr. Alcock desires the offer, Jan. 9, 1814; sold to Mr. Alcock, April 8, 1814." Upon the margin, and referring to lot No. 38, by a mark of reference, were the following words: "H. Penhallow and B. Penhallow sold to Capt. Isaac Smith $\frac{29}{48}$ parts of this lot No. 38; and B. Penhallow agreed to sell said Smith, for Mr. Cabot's heirs, $\frac{8}{48}$ parts, per agreement, dated 7th February, 1829―$\frac{1}{48}$ part, owned by Sarah Penhallow, is unsold." The court overruled the objection, and admitted the plan; and in the course of the trial the deeds, referred to thereon, were produced and proved.

It was alleged by the demandant that Hunking and Benja-

min Penhallow derived their title to the demanded premises, which consisted of wild lands, from Richard Wibird, through sundry conveyances and devises. It was necessary for the demandant, in order to make out his title, to prove that Richard Wibird died intestate as to his wild lands, and that he left a brother, Thomas Wibird, a nephew, Anthony Wibird, and a niece, Sarah Penhallow, who were his sole heirs at law. To show this, he offered the deposition of Benjamin Penhallow, who testified that Richard Wibird died without issue, in the month of September, A. D. 1765, intestate as to his wild lands, and that the three persons above named were his heirs at law. The tenant objected to the competency of the evidence to prove these facts, but the objection was overruled, and the evidence admitted.

Much other testimony was introduced on both sides in relation to the titles of the parties, which it is unnecessary here to state.

The jury returned a verdict for the demandant for $\frac{3}{4}\frac{8}{8}$ parts of the demanded premises, which the tenant moved to set aside on account of the admission of the evidence aforesaid.

*C. H. Atherton,* (with whom was *Farley,*) for the tenant. We object to the competency of the plan, on account of the memoranda upon it. The party who has had the custody of the paper, has made entries upon it, which give it a weight to which otherwise and of itself it is not entitled. No other or different rule should prevail as to this plan, than exists in the case of other documents, to which unauthorized additions have been made.

As to the deposition of Penhallow, his testimony shows that Richard Wibird made a will, and then he says that the testator died intestate as to his wild lands. This is not a proper subject of parol proof. The will should be produced, that the court may see whether he did die intestate as to this part of his real property. This is a matter which the court cannot take from the mouths of witnesses, for there is

much better evidence than that of a witness who swears, at best, to a conclusion of law.

The testimony of Penhallow is also incompetent to prove that the persons he mentions were Richard Wibird's heirs at law. It is not stated that he left so many brothers and sisters, or nephews and nieces ; leaving it for the court to determine who were his heirs at law ; but the witness has given a list of persons, who, he says, *were* the heirs at law.

*Baker*, for the demandant. It is not denied by the tenant, that the survey offered was the survey originally made by James Betton. The case also finds that it was offered to prove the courses and distances of the lines separating the lots of the right No. 15. It was offered for no other purpose. It appears, from inspection, that no alteration has been made in the lines indicating the courses and distances, nor in the words explanatory of them. Nor has there been any alteration, mutilation, or addition, where the interest of these parties is concerned, injurious to the tenant. But though certain words and figures have been added to it, it does not thereby render it inadmissible for certain purposes. Even the alteration of a deed or promissory note, if it be in a matter immaterial, does not affect their validity. *Hunt* vs. *Adams*, 6 *Mass.* 522. Much less should an ancient survey, like this, be affected by such an addition. Besides, this very survey has been repeatedly used in this court, and the titles to many estates in Deering depend upon its authenticity, the original deeds uniformly referring to it.

As to that part of the testimony of Penhallow which is objected to, it strikes us that the most unfavorable view that can be taken of it, is that it is surplusage. We admit that a witness can only testify to facts, and that it is the province of the court to make the inferences of law. But all the witness does in this instance is to make the inference of law, himself, from the facts stated. This does not preclude the court from taking the facts, rejecting the inference made

Morrill *v.* Otis.

by the witness, and making the proper inference themselves. He states that certain persons stood in certain degrees of relationship to Richard Wibird. This is a statement of a fact, and the court are not precluded from making the inference that these persons were the heirs at law, merely because the witness has said that they *were* the heirs at law.

The objection is also taken that the witness could not testify that Richard Wibird died intestate as to his wild lands. This, also, is merely surplusage, for he is presumed to have died intestate, until the contrary is proved, as to all his property. This presumption is not weakened, certainly, because the witness has stated that he *did* die intestate. It does not appear that he made any will, devising any property.

GILCHRIST, J. The case finds that it was necessary for the demandant to prove who were the heirs at law of Richard Wibird. The evidence on this point is the testimony of Penhallow, who says that Richard Wibird died without issue, leaving three persons, his brother, his nephew, and his niece, his heirs at law. The tenant objects that this evidence is incompetent to prove the fact in question.

The relationship which certain individuals bear to a deceased person, such as brother, nephew, niece, &c., is a question of fact, to be proved before a jury. In the case before us, the alleged heirs at law were collateral relations, and their relationship to Richard Wibird should have been proved by showing, in some way, that they were descended from a common ancestor. That Thomas, for instance, was the brother of Richard, should have been shown by proof of the marriage of their father and mother, and that Richard and Thomas were the legitimate issue of that marriage. The same evidence, also, is necessary to show the relationship of the parents of Anthony Wibird and Sarah Penhallow to Richard Wibird. And to show that these persons were his nephew and niece, the marriage of their parents, and their relationship to the deceased, should also have been shown.

Morrill *v.* Otis.

In the absence of direct evidence of the marriage of these several parties, proof of their cohabitation as husband and wife, the education of their children as their legitimate issue, according to their station in life, and their acknowledging them to be such in the face of the world, must be given. This evidence would be competent to prove the relationship of the parties to Richard Wibird, and evidence of this general character must be submitted to the jury for that purpose. But to establish the fact that these persons were his heirs at law, farther evidence is requisite, of a negative character, showing that no other descendants from the common ancestor existed at the time, to share the inheritance with them. The degrees of consanguinity in which the various persons stood to the deceased having been proved, it is then a matter for the court to determine who among them were his heirs at law. This is an inference to be made from facts proved. But Penhallow swears not only to the inference of fact, but to the inference of law likewise ; and no witness can testify to any conclusions, except as to matters of skill as an expert. He not only states that Thomas was the brother of Richard, which is a conclusion to be made by the jury from evidence tending to prove that such was the case ; but he states that the persons mentioned were the heirs at law, which is a matter for the court to determine. His testimony, therefore, if admitted, precludes the jury from examining the question of fact, and the court from determining the question of law ; and we think it was improperly admitted.

The testimony of Penhallow is also inadmissible to prove that Richard Wibird died intestate as to his wild lands. If he died intestate as to his wild lands, the inference would seem to be that he disposed of his other property by will. But whether he did thus die intestate, is to be determined from an examination of the will, the construction and effect of which are matters of law for the court. Whether his wild lands are comprehended in any devise of the rest of his real estate, is not a matter to be settled upon the testimony of

witnesses, but upon an examination of the language used by the testator. But the witness is not competent to state that the deceased died testate or intestate. The grant of letters of administration is better evidence of intestacy, than the testimony of the witness. But we are not aware that there is any presumption of law, either that a person died testate or intestate. To prove that he left a will, an examination should be made of the records of the court of probate, that being by statute the place of deposit for wills. If no evidence can be found there, then the presumption will be, *prima facie*, that he died intestate. But upon no ground whatever can a witness be permitted to state, in this comprehensive manner, what is, in substance, his legal opinion of the meaning and intent of the will, where no search has been made for the instrument, in its ordinary place of deposit ; and no evidence is offered, except the inference that may be made from the testimony of the witness, of its existence, and none at all of its destruction or phraseology. We think, therefore, that on this point, also, the testimony of the witness was improperly admitted.

The other objection, that the plan was inadmissible on account of the words written upon it, must be overruled. An alteration of an instrument is something by which its meaning or language is changed, either in a material or an immaterial particular. If what is written upon, or erased from the paper containing the instrument, have no tendency to produce this result, or to mislead any person, it cannot be said to be an alteration. Now it is very evident that the memoranda upon the plan were intended only to enable the person making them to remember who desired to purchase the lots, and to whom and when lot No. 38 was sold. They do not affect the authenticity of the plan, for that is admitted to be the genuine plan. They do not vary in any way the courses and distances of the lines separating the lots, or the relative situations of the lots to each other. It may be said that they disfigure the face of the plan, because it was not

Morrill *v.* Otis.

intended to be a place of record of conveyances, or offers to purchase, but it does not follow that they alter it. It was not intended to be disfigured by time, by stains, by accidental blots, or for any other purpose than a delineation of the land; but all these tend as much to change its meaning as do the memoranda. All that can be said of them is, that they should be entirely disregarded by the jury, and are to be treated as if they did not exist; and the jury should be instructed to that effect, if desired. Even if it might have been said, on the production of the plan, that the memoranda might have some weight in inducing the jury to believe that the conveyances mentioned in them were actually made, that objection was obviated in the course of the trial, for the deeds were produced and proved. Nor is there any evidence that they were made with any intent to mislead or injure any person; and whether such evidence would have rendered the plan inadmissible, it is unnecessary here to determine. Such being our views, we are not called upon to investigate the numerous decisions to be found in the books upon the question of alterations in instruments; and, even if these memoranda could, without an abuse of language, be considered as amounting to an alteration, it would be an immaterial one; because by it, in the language of Parsons, C. J., in *Smith* vs. *Crooker,* 5 *Mass.* 540, "neither the rights or interests, duties or obligations, of either of the parties are in any manner affected or changed."

For the admission of the other evidence in the case, the court are of opinion that the verdict must be set aside, and that there should be a

*New trial.*